# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ANGEL RIVERA-RIVERA, *et al.*,

   Plaintiffs,

        v.

THYSSENKRUPP ELEVATOR CORP.,

   Defendant.

**Civil No. 14-1478 (SEC)**

## OPINION & ORDER

    Plaintiffs Angel Rivera-Rivera (Rivera), Miriam Curbelo, and their Conjugal Partnership (Plaintiffs) bring this action alleging that Rivera suffered age-related harassment and discrimination at the hands of Defendant ThyssenKrupp Elevator Corp. (Defendant). They further claim that Defendant retaliated against them for filing a charge with the Equal Employment Opportunity Commission (EEOC), and ultimately, that Rivera was constructively discharged due to an impermissibly hostile work environment.

    Currently before the Court is Defendant's Motion for Summary Judgment. Docket # 15, and Plaintiffs' Opposition, Docket # 18. For the reasons that follow, Defendant's Motion is **DENIED**.

    **Procedural History**[1]

    Thyssen is a company dedicated to the installation, modernization, service and repair of elevators and escalators. Since 1985, Rivera worked as an elevator mechanic in Thyssen's service department. Plaintiffs allege that from the "middle of 2006, and

---

[1] Due to the nature of Defendant's arguments, a detailed examination of the facts underlying Plaintiffs' claims is not necessary.

up until October of 2012," Rivera's workload was steadily increased, while the workload of his other colleagues remained the same. His supervisors also constantly pressured him to resign because he was "old and slow." Rivera ended up diagnosed with depression, and ultimately applied for disability benefits on September 28, 2012.

Sometime in June 2013, Rivera filed an EEOC charge in June 2013 against Thyssen for alleged violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act (ADA). Defendant says that this charge was filed on June 26, while Plaintiffs claim it was filed on June 6.

### Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). The nonmovant cannot rest on conclusory allegations and improbable inferences. Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH,

781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

**Applicable Law and Analysis**

Defendant moves for summary judgment on two grounds. First, that Plaintiffs have failed to exhaust their administrative remedies within the statutory time period. Second, that Rivera, as a union employee, is bound by his union's Collective Bargaining Agreement (CBA) with Defendant, which requires that Plaintiffs' claims be submitted to arbitration. The Court addresses each argument *seriatim*.

A. Plaintiffs' claim is not time barred

Before bringing suit in federal court, the ADEA requires an employee to exhaust their administrative remedies. 29 U.S.C. § 626(d). To do so, the employee must file a charge with the EEOC within a statutorily-defined time period and serve notice upon the person against whom the charge is made. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). The ADEA contemplates two possibilities. "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice." Id.; see also 29 U.S.C. §§ 626(d) & 633(b). Otherwise, the charge must be filed within a shorter 180-day period. Id. In Puerto Rico, this entity is the Department of Labor's Antidiscrimination Unit (ADU).

Defendant asserts that in this case, Rivera presented his charge to the EEOC but never filed anything with the ADU. In support of this argument, Defendant references a letter from the Director of the ADU, attorney Myriam Costa Malaret, confirming that

the ADU never received Plaintiff's administrative charge.[2] Because Plaintiffs filed their charge with the EEOC beyond the 180-day limit, Defendant submits that their claims are time barred.

But Plaintiffs have an ace up their sleeve. Specifically, the "workshare agreement" between the ADU and the EEOC provides as follows:

> In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for purposes of Section 706 (c) and (e)(1) of Title VII.

See Docket # 18-2 at p. 13 (our emphasis); see also Matos Molero v. Roche Products, Inc., 132 D.P.R. 470 (1993) (discussing the workshare agreement between the EEOC and the Puerto Rico Antidiscrimination Unit). This reciprocity provision essentially means that any charge filed with one agency is considered, as a matter of law, to have been received by the other. Moreover, given the opening stanza of this paragraph, the Court understands that the workshare agreement should be interpreted liberally in favor of the employee seeking relief from discrimination. This provision alone warrants the denial of Defendant's motion, as it is uncontested that Rivera filed his charge with the EEOC -and thus with the ADU- within the 300-day time limit.

To cement this conclusion, Plaintiffs submit the EEOC charge filed with the EEOC on June 2015, which clearly shows that Rivera's intention was for the charge to be filed with both agencies. In that document, Rivera placed a conspicuous checkmark beside a box stating as follows: "I want this charge filed with both the EEOC and the State or Local Agency, if any." See Docket # 18-2 at p. 7. The charge form further provides that "State or Local Agency, if any" is the "Puerto Rico Dept. Of Labor – Antidiscrimination Unit." Id. Thus, notwithstanding the letter from the ADU's

---

[2] Although Defendant claims the letter was submitted as an exhibit to the motion for summary judgment, the Court could not locate the same in the record. Regardless, for the reasons stated below, this omission is immaterial.

Director, the Court finds that Rivera's charge was filed with both agencies. This means, of course, that the more lenient 300-day time limit applies. Since the parties do not dispute that the charge was filed within this time frame, Defendant's motion for summary judgment on this point must be denied.

B. Plaintiffs' claims are not pre-empted by the CBA

Thyssen employees have been unionized for various years. Thyssen and the Union, "Los Gladiadores," have a Collective Bargaining Agreement which governs the terms of union members' employment, including discipline and discharge, grievances and arbitration. See Docket # 25-1. Plaintiffs do not dispute that Rivera was a union member, and thus, was covered by the CBA. Defendant now argues that the CBA expressly provides a dispute resolution procedure, which Plaintiffs were required to exhaust, before bringing their claims to this Court. As a result, Defendant urges the Court to dismiss these claims as improvidently brought. The Court takes a brief detour through the CBA in order to put Defendant's arguments in context.

Article I of the CBA expressly states that neither "the Union nor the Company will discriminate against the employee" for reasons prohibited by law, including on account of age. See Docket # 15 at ¶ 9. According to the CBA, the "Union will determine, if a controversy on discrimination exists, whether to resort to arbitration or to the Court." Id.

The CBA provides a robust, multi-step procedure for the resolution of employee grievances, including those relating to employment discrimination. Id. at ¶ 11. In particular, Article XIII of the CBA provides that the following must be submitted to the CBA's dispute resolution procedure, which includes arbitration:

> any controversy, dispute, conflict or any discrepancy or difference of interpretation arises between the Union and the Company involving the meaning or the application of the provisions of this [CBA], or any controversy dispute or conflict between the Union and the Company on disciplinary matters, warning letters, sanctions or the lay-off or termination of one or more employees[.]

<u>Id.</u> Defendant argues that Plaintiffs could not circumvent the CBA's dispute resolution procedure by bringing an ADEA claim in federal court. According to Defendant, the "CBA in this case made the grievance and arbitration procedure the sole and exclusive remedy for any claims, including statutory discrimination claims." <u>See</u> Docket # 15 at ¶ 10. While this argument seems reasonable on its face, the Court nevertheless finds that it "runs aground on well-settled case law governing the arbitrability of federal statutory claims." <u>Manning v. Boston Med. Ctr. Corp.</u>, 725 F.3d 34, 51 (1st Cir. 2013).

The Court starts with some basics. In <u>O'Brien v. Town of Agawam</u>, 350 F.3d 279 (1st Cir. 2003), the First Circuit rejected the argument that claims of unionized employees under the Fair Labor Standards Act (FSLA) were "barred from federal court because they are essentially contract claims for unpaid overtime" and therefore subject to the CBA's grievance and arbitration procedures. <u>Manning v. Boston Med. Ctr. Corp.</u>, 725 F.3d at 51. The First Circuit noted that the rights "conferred by Congress are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap." <u>O'Brien</u>, 350 F.3d at 284. Likewise, in this case, there is no reason to think that Plaintiffs' ADEA claims lose their federal statutory underpinning simply because the CBA addresses "similar subject matter." <u>Manning</u>, 725 F.3d at 51. Properly worded, then, the question is whether Plaintiffs' ADEA claims must be channeled through the CBA's dispute resolution procedure.

As Defendant correctly notes, the Supreme Court's jurisprudence on whether arbitration is a valid method to resolve employment discrimination claims has proven quite malleable over the years. Consistently, though, the Supreme Court has held that in order for a CBA to subject a federal statutory claim to arbitration, any such waiver must be "clear and unmistakable" on its face. <u>See</u> <u>14 Penn Plaza LLC v. Pyett</u>, 556 U.S. 247, 260 (2009) (holding that union members' age discrimination claims must be subject to CBA's arbitration provisions because CBA "clearly and unmistakably requires respondents to arbitrate" them); <u>Wright v. Universal Mar. Serv. Corp.</u>, 525

**Civil No. 14-1478 (SEC)**　　　　　　　　　　　　　　　　　　　　　　　　　**Page 7**

U.S. 70, 80 (1998) (holding that requirement contained in CBA requiring parties to arbitrate employment discrimination claims must be clear and unmistakable, <u>and that "less-than-explicit" waiver was insufficient</u>). The law is also clear that the waiver must be <u>specific</u>. Broadly-worded arbitration clauses will not do; instead, "something closer to specific enumeration of the statutory claims to be arbitrated is required." <u>Cavallaro v. UMass Mem'l Healthcare, Inc.</u>, 678 F.3d 1, 7 n.7 (1st Cir. 2012).

　　　Here, Defendant "cannot point to a single provision" of the CBA that would work a "clear and unmistakable waiver" of Plaintiffs' ADEA claims. <u>Manning</u>, 725 F.3d at 53. Certainly, the CBA here does not come even close to mentioning a specific enumeration of the statutory claims to be arbitrated. In this sense, the CBA is strikingly similar to the one before the First Circuit's consideration in <u>Manning</u>: while its "arbitration provisions do contain general grievance procedures" the CBA defines grievances as "disputes or concerns arising out of the interpretation of the CBAs themselves." <u>Id.</u> Furthermore, the CBA here is miles apart from the one in <u>Pyett</u>, which explicitly required the arbitration of "claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act," among others. <u>Pyett</u>, 556 U.S. at 252. It is thus clear that the CBA between Defendant and the Union does not force a waiver on Plaintiff's ADEA claims. These claims are properly before the Court, and so Defendant's motion on this ground must be denied.[3]

　　**Conclusion**

　　For the reasons stated above, Defendant's Motion for Summary Judgment is hereby **DENIED**.

---

[3] Plaintiffs' argument against dismissal does not rely on any of the caselaw cited above. Rather, Plaintiffs simply observe that the arbitration forum selected in the CBA, the "Negociado de Conciliacion y Arbitraje" (NCA) does not have jurisdiction, pursuant to its own rules, to hear disputes under Title VII. If that is indeed the case, then it beggars belief how the CBA could be construed as a waiver of Plaintiffs' ability to bring their claims before this Court, as it would have the effect of closing the doors on either forum.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2015.

>*s/ Salvador E. Casellas*
>SALVADOR E. CASELLAS
>U.S. Senior District Judge